**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: | Case No. 10-15776 |
| BRITTWOOD CREEK, LLC, | Chapter 11 |
| | Hon. Jacqueline P. Cox |
| Debtor. | Hearing Date: May 12, 2010 |
| _____/ | Hearing Time: 9:30 a.m. |

**NOTICE OF MOTION**

To: See Attached Service List

PLEASE TAKE NOTICE that on Wednesday, May 12, 2010 at 9:30 a.m., or as soon thereafter as counsel may be heard, we shall appear before the Honorable Jacqueline P. Cox or any Judge sitting in her stead, in the courtroom usually occupied by her in Room 619, 219 South Dearborn Street, Chicago, Illinois 60604, and shall then and there present the *Motion of Bridgeview Bank Group Pursuant to 11 U.S.C. §§ 1112(b), 362(d), 361 and 363, for an Order Dismissing the Bankruptcy Case, or, in the Alternative, Granting Relief from the Automatic Stay and Adequate Protection*, a copy of which is attached hereto.

Respectfully submitted,

By: /s/ Douglas J. Lipke
One of Its Attorneys

Douglas J. Lipke (#03124576)
Ryan O. Lawlor (#6288339)
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL 60601-1003
(312) 609-7500
Dated: April 21, 2010

CHICAGO/#2060613.1

# **CERTIFICATE OF SERVICE**

      I, Douglas J. Lipke, an attorney, certify that a true and correct copy of the (i) Motion of Bridgeview Bank Group Pursuant to 11 U.S.C. §§ 1112(b), 362(d), 361 and 363, for an Order Dismissing the Bankruptcy Case, or, in the Alternative, Granting Relief from the Automatic Stay and Adequate Protection, (ii) Notice of Motion, (iii) Required Statement, and (iv) three (3) proposed orders with respect to such motion were filed with the Clerk of the U.S. Bankruptcy Court, Northern District of Illinois, using the CM/ECF filing system, which caused a copy to be electronically mailed to all CM/ECF participants registered to receive electronic notices in the above captioned case; and served by overnight delivery to the following parties on the attached Service List on this 21st day of April, 2010.

Dated: April 21, 2010                                                                    By:   /s/ Douglas J. Lipke

CHICAGO/#2060613.1

# SERVICE LIST

CHICAGO/#2060613.1

Label Matrix for local noticing
0752-1
Case 10-15776
Northern District of Illinois
Chicago
Tue Apr 20 16:14:06 CDT 2010

Brittwood Creek LLC
11500 W 79th St.
Burr Ridge, IL 60527-5111

(c)ALL AMERICAN PLUMBING
716 VANDUSTRIAL DR
WESTMONT IL 60559-2499

Arrow Road Construction Co.
3401 S. Busse Rd.
PO Box 334
Mount Prospect, IL 60056-0334

Bellock & Coogan, Inc.
1110 Jorie Blvd
Suite 210
Oak Brook, IL 60523-2155

Callaghan Associates, Inc.
43 BAYBROOK
OAK BROOK, IL 60523-1673

Contech Construction Products, Inc
1200 Harger
Oak Brook, IL 60523-9001

Daniel P. Callghan
43 Baybrook Ln.
Oak Brook, IL 60523-1673

David G. Callaghan Revocable Trust
c/o Jeffrey Schmidt, trustee
2580 Foxfield, St. 201
Saint Charles, IL 60174-1409

Engineering Resource Assoc, Inc
3S701 West Avenue
Suite 150
Warrenville, IL 60555-3264

Fergon Architects, LLC
434 N Dover Ave
LaGrange Park, IL 60526-1705

Forest Gate Inc.
43 Baybrook Ln.
Oak Brook, IL 60523-1673

Halquist Stone
PO Box 88033
Milwaukee, WI 53288-0001

Honey Bucket
PO Box 491
Elmhurst, IL 60126-0491

Image Enterprises, Inc.
565 Clarissa Court
Naperville, IL 60540-8101

Institute In Basic Life Prinicples
943 N. Adams Rd.
Oak Brook, IL 60521-3160

Ives/Ryan Group
1801-A North Mill Street
Naperville, IL 60563-4869

J & L Enterprises, LTD
4700 N Gilbert Ave, Suite 47
PMB # 221
Western Springs, IL 60558-1666

John H. Yelnick Construction Co
130 Indian Wood Lane
INDIAN HEAD PARK, IL 60525-3726

John Pcolinski
Guerard, Kalina and Butkus
100 W. Roosevelt, St., St. A1
Wheaton, IL 60187-5260

Morrissey & Robinson
One Oak Brook Terrace
Suite 802
Oakbrook Terrace, IL 60181-4476

Neslund & Associates
115 S. River Rd.
North Aurora, IL 60542-1616

O'Neill Masonry, Inc.
12541 Rosewood Drive
Homer Glen, IL 60491-6885

P. Walker Bros., Inc.
716 Burlington Ave
Suite 150
LaGrange, IL 60525-2276

Pac Van
2693 Paysphere Circle
Chicago, IL 60674-0026

Prairie Path Pavers, Inc.
500 E. Cossitt Ave.
LaGrange, IL 60525-2515

Siebert Trucking Service, Inc.
PO Box 5006
Naperville, IL 60567-5006

          Document      Page 5 of 18

Testing Service Corp.  
360 S. Main Place  
Carol Stream, IL 60188-2404

Trident Custom Builders  
1357 Lahard Road  
New Lenox, IL 60451-2923

Unilock Chicago  
301 E. Sullivan rd.  
Aurora, IL 60505-9762

Visa  
PO 1111  
Madison, WI 53701-1111

Willie Brothers Lumber, Inc.  
12600 Hamlin Court  
Alsip, IL 60803-1525

Woodland Green, Inc.  
2655 N Meadow Dr  
Morris, IL 60450-7394

Michael J. Davis  
Springer, Brown, Covey, Gaetner & Davis  
400 S County Farm Road  
Suite 330  
Wheaton, IL 60187-4547

William T Neary  
Office of the U.S. Trustee, Region 11  
219 S Dearborn St  
Room 873  
Chicago, IL 60604-2027

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

All American Plumbing  
6S716 Vandustrial Drive  
Westmont, IL 60559

End of Label Matrix  
Mailable recipients    37  
Bypassed recipients     0  
Total                  37

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | Case No. 10-15776 |
| | Chapter 11 |
| BRITTWOOD CREEK, LLC, | |
| | Hon. Jacqueline P. Cox |
| | Hearing Date: May 12, 2010 |
| Debtor.                              / | Hearing Time: 9:30 a.m. |

## MOTION OF BRIDGEVIEW BANK GROUP PURSUANT TO 11 U.S.C. §§ 1112(B), 362(d), 361 AND 363, FOR AN ORDER DISMISSING THE BANKRUPTCY CASE, OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY AND ADEQUATE PROTECTION

Bridgeview Bank Group (the "Lender"), by its counsel, Douglas J. Lipke, Ryan O. Lawlor and the firm of Vedder Price P.C., respectfully moves the Court for (i) dismissal of this chapter 11 case (the "Chapter 11 Case") filed by Brittwood Creek, LLC ("Brittwood" or the "Debtor"), or, in the alternative, (ii) relief from the automatic stay to allow the Lender to prosecute its foreclosure action against the Debtor and for adequate protection. In support of its motion ("Motion"), the Lender states as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 1112(b), 361, 362(d) and 363 of title 11 of the United States Code (the "Bankruptcy Code").

## SUMMARY OF MOTION

2.     This case presents a classic situation of a debtor seeking the protections of chapter 11, despite having no prospect for reorganization, simply to delay a foreclosure by a secured lender commenced nearly six months ago. The Debtor is a single purpose entity whose sole asset is a parcel of real estate fully encumbered by the liens of its undersecured lenders and has few unsecured liabilities. Upon information and belief, the Debtor has no employees. Simply stated, the Debtor has no clear incentive to pursue this Chapter 11 Case, other than to avoid foreclosure. Congress did not intend Chapter 11 to be used in this manner, and the Court should not permit the Debtor to waste time and money on a chapter 11 process when reorganization is both unrealistic and unnecessary to resolve what amounts to a simple two-party dispute.

3.     Accordingly, the Lender seeks dismissal of the Debtor's Chapter 11 Case pursuant to 11 U.S.C. § 1112(b). In the alternative, the Lender requests that this Court lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) or (d)(2) to allow the Lender to prosecute its foreclosure action and foreclose on its collateral. In addition, the Lender respectfully submits that, if the Debtor remains in chapter 11, the Court should grant the Lenders adequate protection in the form of requiring the Debtor to immediately continue debt service of interest and principal, which has not been paid as regularly scheduled for nearly nine (9) months.

## BACKGROUND

**I.    The Debtor, the Construction Loan and the Project**

4.     The Debtor is a single purpose entity that owns a residential project in Du Page County, Oak Brook, IL known as SEQ 35th Street and Route 83 (30 lot subdivision on 56.14 acres), Oak Brook, IL 60521 (such real and personal property is referred to herein collectively as the "Project"). The Project was developed with approximately $25 million in loans advanced by

the Lender pursuant to a Construction Loan Agreement (the "Construction Loan Agreement") dated as of November 29, 2006, as amended, by and between Brittwood and the Lender.[1] The Project and the proceeds therefrom are pledged to the Lender as collateral for Brittwood's obligations under the Construction Loan Agreement.[2]

5. The Project consists of 30 residential real estate parcels. The Project, however, is vacant. Indeed, as of the Petition Date, only one unit of the 30 has been conveyed to a third party purchaser, and not one home has been built on the Project.

6. As of the Petition Date, the Debtor's aggregate outstanding obligations to the Lender were in the principal and accrued interest sum of approximately $24,793,920.47, plus fees, expenses and other costs reimbursable under the Loan Documents (collectively, the "Indebtedness").

## II. The Debtor's Defaults, the Foreclosure Action and Petition

### A. The Debtor's Defaults Under the Loan Documents

7. Brittwood failed to comply with the terms of the Loan Documents and is in default due to, among other things, its failure to pay the Loan in full on its maturity date of September 5, 2009 (collectively, the "Defaults").

---

[1] The Construction Loan Agreement, a Promissory Note executed in connection with the Construction Loan Agreement, the Assignment of Rents, the Commercial Security Agreement and the Mortgage (as defined below) and all other documents executed and/or delivered from time to time in connection with, or otherwise evidencing, securing or related to the Note, each as may have been amended or modified from time to time, are collectively referred to as the "Loan Documents." Copies of the relevant Loan Documents are collectively attached hereto as Exhibit A.

[2] The Lender's lien and security interest in and to the Project are evidenced by, among other things: (i) the Construction Mortgage dated as of November 29, 2006 from the Debtor to the Lender, recorded with the Du Page County Recorder, R2006-238734 (the "Mortgage"), which encumbers the real and personal property located in Oak Brook, IL, that is the underlying property for the Project; and (ii) a UCC-1 Financing Statement, filed on December 8, 2006, naming Brittwood Creek, LLC, as Debtor, and the Lender, as Secured Party, under File No. 11600654 ("Financing Statement").

8. Both prior to and subsequent to the maturity date, Brittwood has also failed and/or refused to pay real estate taxes with respect to the Project, and, upon information and belief, the 2009 real estate taxes remain unpaid. The Lender, in order to avoid further encumbrances on the Project and the continued diminution of its collateral, advanced funds on behalf of Brittwood to pay the 2008 real estate taxes. Despite demands by the Lender, the Debtor has not cured any of the Defaults.

### B. The Lender's Foreclosure Action

9. On or about October 29, 2009, the Lender filed an action to foreclose on the Project in the Circuit Court for the Eighteenth Judicial Circuit, in and for Du Page County, Wheaton, Illinois. The proceeding is captioned *Bridgeview Bank Group v. Brittwood Creek, LLC, et al.,* Case No. 09 CH 005173 (the "Foreclosure Action").[3]

### C. The Debtor's Bankruptcy Filing

10. On Friday, April 9, 2010, on the last business day before the sheriff's sale scheduled for Monday, April 12, 2010 resulting from the Foreclosure Action, the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "Petition").

11. The Schedules state that the Debtor's secured liabilities include (i) $22,000,000 of indebtedness to the Lender, (ii) approximately $13,000,000 of indebtedness to Institute in Basic Life Principles ("IBLP"), and (iii) another approximately $100,000 due contractors and/or subcontractors holding mechanic's liens. *See* Schedule D. By the Debtor's own assertion, the Project, the only asset of material value to the estate, is only worth $32,000,000 – more than $3,000,000 less than the secured claims against the Project. While the Lender is confident that the evidence will show the Debtor has understated the amount of the Lender's claim and

-4-

overstated the value of the Project, the result is the same based on the Debtor's assertions – the Debtor has no equity in the Project and the two lenders are grossly under-secured.

12.     The Schedules further disclose non-insider unsecured claims of only $723,474.94 relating to trade debt and other unsecured claims, all of which is disputed. *See* Schedule F. Additionally, the Schedules do not identify a single wage, salary or commission claim or any contributions owing to any employee benefit plans, further evidencing the lack of any employees of the Debtor. *See* Schedule E. Based on the foregoing, the sum of unsecured claims, priority or otherwise, against the Debtor (excluding insider claims) only amounts to 2% of the amount of the secured claims of the Lender and IBLP.

### III.    Maintenance of the Project

13.     Prior to the Petition Date, the Debtor encountered significant problems in the marketing of the Project. Upon information and belief, the 30 residential lots that comprise the Project first became available for sale in or about August 2008. It was about this time in August 2008 that the Debtor initially sold one lot. That lot, however, remains vacant to this day, and, upon information and belief, no construction is scheduled to begin in the near future. Moreover, since that time, **which amounts to nearly two (2) years ago now**, the Debtor has not closed a single sale of a residential lot in the Project. Additionally, it is believed there are certain infrastructure and development projects that have not been completed by the Debtor with respect to the Project and that such projects will require an additional $1-$1.5 million to complete. These are funds the Debtor quite clearly does not have.

---

[3] A copy of the Lender's Complaint to Foreclose Mortgage and for Other Relief (excluding exhibits) is attached hereto as Exhibit B and the Judgment of Foreclosure and Sale resulting therefrom is attached hereto as Exhibit C.

CHICAGO/#2057750.4

**RELIEF SOUGHT**

14.     By this Motion, the Lender seeks the entry of an order (i) dismissing the Debtor's Chapter 11 Case pursuant to section 1112(b) of the Bankruptcy Code or, in the alternative, (ii) granting (a) relief from the automatic stay under section 362(d) of the Bankruptcy Code to permit the Lender to pursue the Foreclosure Action and foreclose on the Project, and (b) adequate protection to the Lender.

**ARGUMENT**

**A.    The Debtor's bad faith filing constitutes cause for dismissal of this Chapter 11 Case pursuant to Bankruptcy Code Section 1112(b)**

15.     Bankruptcy Code section 1112(b) authorizes a court to dismiss bankruptcy cases for "cause." 11 U.S.C. § 1112(b). Although "cause" is not defined in the Bankruptcy Code, section 1112(b) sets forth a non-exhaustive list of factors that can constitute cause for dismissal. This Court, as well as many others, has consistently found that "bad faith" constitutes "cause" for dismissal under section 1112(b). *In re Tekena USA, LLC,* 419 B.R. 341 (Bankr. N.D. Ill 2009); *In re Original IFPC Shareholders, Inc.,* 317 B.R. 738 (Bankr. N.D. Ill 2004); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988) (listing factors evidencing bad faith); *In re State Street Houses, Inc.*, 356 F.3d 1345 (11th Cir. 2004) (affirming dismissal on "bad faith" grounds of petition filed by single asset real estate chapter 11 debtor with few creditors, and applying *Phoenix Piccadilly* factors).

16.     In this case, there is no legitimate doubt the Petition was filed solely to thwart the Lender's effort to enforce the Lender's secured claims in the estate's only significant asset or source of revenue, the Project. As stated above, the Petition was filed literally on the last business day before the sheriff's sale. That is not a proper basis for a chapter 11 filing. *See*

- 6 -

*Tekena,* 419 B.R. at 346 ("One of the hallmarks of bad faith in filing a petition is pre-petition litigation already pending in the state court between the parties").

17.     While there is no particular test for determining bad faith, "courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re McCormick Road Associates,* 127 B.R. 410, 413 (N.D. Ill 1991) (quoting *Phoenix Piccadilly* (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984)).  The *McCormick* court followed the following factors set forth by the Eleventh Circuit as particularly relevant to bad faith:

- the debtor only has one asset, the property at issue;

- the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors;

- the debtor has few employees;

- the property is subject to a foreclosure action as a result of amounts owing on the debt;

- the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and

- the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*See, e.g., McCormick*, 127 B.R. at 413, State *Street Houses*, 356 F.3d at 1346-47; *Phoenix Piccadilly*, 849 F.2d at 1394-95.

18.     Here, it cannot be disputed that the Debtor's Chapter 11 Case has <u>all</u> of the common attributes of an unjustified and improper filing, and, like the petitions in *McCormick, State Street Houses* and *Phoenix Piccadilly*, it should be dismissed.  As set forth above, and by the Debtor's own admissions, the Debtor's only material asset is the Project.  The Debtor has

very few non-insider unsecured creditors whose claims only amount to 2% of the amount of the secured creditors' claims. *See In re Vallambrosa Holdings, L.L.C.,* 419 B.R. 81 (Bankr. S.D. Ga. 2009) (finding this factor in favor of dismissal where debtor has approximately $31 million in secured claims and $2 million in unsecured claims); *State Street Houses* (lack of good faith where secured claims were $14,400,000 and unsecured claims were $3,000,000). The Debtor appears to have no employees. The sole asset, the Project, was subject to the Foreclosure Action and was scheduled to be sold at a sheriff's sale the business day after the Petition was filed. Lastly, the Debtor's financial problems are essentially only a dispute with the Lender, as the only other significant creditor to the Debtor (other than its sole managing member) is IBLP, which is prevented from taking any action against the Debtor pursuant to a subordination agreement with the Lender.

19.  In *Tekena*, this Court applied similar factors from *In re Grieshop*, 63 B.R. 657 (N.D. Ind. 1986) in dismissing a debtor's chapter 11 case. Using the same chart set forth in the *Tekena* opinion, the chart below sets forth the factors substantially weighing in favor of the dismissal of this Chapter 11 Case:

| Factors Considered by the *Grieshop* Court and this Court in *Tekena* | Comparison to this Chapter 11 Case |
|---|---|
| 1. The debtor has few or no unsecured creditors. | The Debtor has less than 20 unsecured creditors (excluding its sole manager), whose claims amount to only approximately 2% of the amount of the secured claims against the Debtor's major asset, the Project. |
| 2. There has been a previous bankruptcy petition by the debtor or a related entity. | Not alleged here. |
| 3. The pre-petition conduct of the debtor has been improper. | The Debtor has not paid real estate taxes since 2008. Further, given the additional $1-$1.5 million believed to be required to complete certain tasks related to the Project and the $700,000 of unsecured creditors, the Lender is investigating the |

- 8-

| | |
|---|---|
| | disbursement of funds to the Project and the possible use of funds for other projects or the Debtor's member's personal use. |
| 4. The petition effectively allows the debtor to evade court orders. | The Petition allows the Debtor to evade the orders entered in the Foreclosure Action ordering the sale of the Project and payment of the obligations. |
| 5. There are few debts to non-moving creditors. | As set forth above, there a very few creditors here other than the secured creditors. |
| 6. The petition was filed on the eve of foreclosure. | Quite literally, the Petition was filed the business day before the sheriff's sale of the Project. |
| 7. The foreclosed property is the sole or major asset of the debtor. | The Project is the Debtor's sole asset other than nominal office furniture and an 8-year old pickup. |
| 8. The debtor has no ongoing business or employees. | The Debtor has no employees or business other than the sale of real estate from the Project, which is insufficient to support the debt and for which there have been no or de minimis sales. |
| 9. There is no possibility of reorganization. | The Debtor has no equity in the Project or available funding, and, upon information and belief, has its hopes for reorganization based on speculative sales of residential units that have not occurred over the last 4 years. |
| 10. The debtor's income is not sufficient to operate. | The Debtor has no income other than the sale of residential units, which it has only sold one since 2006. Moreover, the Debtor does not have the ability to pay property taxes let alone the Lender. |
| 11. There was no pressure from non-moving creditors. | Upon information and belief, no other creditors have pending actions against the Debtor. |
| 12. Reorganization essentially involves the resolution of a two-party dispute. | This is solely a dispute between the Debtor and the Lender, as the Lender has a first-priority security interest in the Project. |
| 13. A corporate debtor was formed or received title to its major assets immediately before the petition and | Not alleged here. |
| 14. The debtor filed solely to create the automatic stay. | As set forth above, this Chapter 11 Case was initiated solely to stay the sheriff's sale scheduled for the day after the Petition was filed. |

- 9-

20.     Dismissal on grounds of bad faith is also appropriate where "there is no realistic possibility of an effective reorganization." *See McCormick*; *see also In re 801 South Wells Street Limited Partnership,* 192 B.R. 718 (Bankr. N.D. Ill. 1996).  Indeed, courts "view with a jaundiced eye Chapter 11 petitions by debtors with a single asset and with no meaningful body of creditors other than those who hold a mortgage on the single asset." *In re South County Realty, Inc. II*, 69 B.R. 611, at 615 (Bankr. M.D. Fla. 1987) (citation omitted).

21.     The Debtor is incapable of demonstrating that there is any reasonable likelihood of a successful reorganization in this case.  All of the Project's units are vacant, and have been listed for sale since on or about August 2008, and, upon information and belief, are listed at a purchase price of approximately $1 million per lot.  Based on historical evidence, any suggestion that lots within the Project might all of a sudden start to occur is speculative and unsupported at best.  Further, the Debtor has no other assets from which it can generate revenue other than the Project, and given current economic conditions, the Debtor cannot generate revenues sufficient to even satisfy basic property taxes, let alone debt service to the Lender or payments to other creditors.  The Debtor has not identified any outside source of revenue or capital that can be reused to repay the tens of millions of dollars due the Lender.  Accordingly, the Chapter 11 Case should be dismissed.

**B.     The Lender is entitled to relief from the automatic stay under both Sections 362(d)(1) or (d)(2) based upon (i) the Debtor's bad faith, (ii) lack of adequate protection and (iii) lack of equity combined with the Debtor's clear inability to reorganize**

22.     Alternatively, if this Court does not grant the relief under section 1112(b) of the Bankruptcy Code, several independent grounds exist to justify granting the Lender relief from the automatic stay to prosecute the Foreclosure Action.

- 10-

**(i)    Stay Relief for Cause is Warranted Based on the Debtor's Bad Faith**

23.    Under section 362(d)(1), bad faith is grounds to lift the automatic stay. *See Acquisition Corp.*, 96 B.R. at 384 (applying test to determine bad faith under section 1112(b) to section 362(d)(1) request for stay relief and lifting stay where bankruptcy petition was filed a day before the debtor would have defaulted on debt to a secured creditor); *Phoenix Piccadilly*, 849 F.2d at 1394 (citing *Natural Land Corp. v. Baker Farms, Inc.*, 825 F.2d 296 (11th Cir. 1987)). A court may lift the stay based on a finding of bad faith even if it permits the bankruptcy petition to be maintained. *See In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1029 (11th Cir. 1989).

24.    As shown above, this Court should lift the automatic stay for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code, based on the Debtor's bad faith filing of the Petition, and permit the Foreclosure Action to proceed.

**(ii)    Stay Relief is Warranted for Lack of Adequate Protection**

25.    Should the Court not find the Debtor's bad faith alone warrants lifting the automatic stay, relief from the automatic stay should nevertheless be granted for lack of adequate protection of the Lender's security interest in the Project under section 362(d)(1) of the Bankruptcy Code. As initial matter, the Debtor has no ability to provide adequate protection because its only assets (the lots) constitute the collateral of the Lender. Moreover, the Debtor has not provided the Lender with adequate protection of the Lender's interest in the Project in the form of interim cash payments, another type of collateral, or the indubitable equivalent of the Lender's interest in the Collateral.

26.    At the same time, however, the Debtor has continued to possess and control the Project and is managing the Project in such a way that is detrimental to the Lender's security interest. Indeed, the Debtor has failed to pay property taxes on the Project, forcing the Lender to pay such amounts or risk additional liens being placed upon its collateral. Moreover, upon

information and belief, all of the funds disbursed pursuant to the Construction Loan Agreement may not have been used on the Project as required. It is unknown, at this time, whether certain funds are still being held by the Debtor or have been used in violation of the Construction Loan Agreement.

27. In light of the foregoing, the Lender is entitled to relief from the automatic stay under section 362(d)(1) for "cause" in order to proceed with the Foreclosure Action.

### (iii) Stay Relief is Warranted Because the Debtor Has No Equity in the Project and it is Not Necessary to an Effective Reorganization

28. Section 362(d)(2) provides for relief from the stay if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). To determine whether a debtor has equity in property, the bankruptcy court must compare the value of the property to the amount of the claims which the property secures. *In re Bowman*, 253 B.R. 233, 238 (8th Cir. BAP 2000) (citations omitted); *Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264, 1275 (5th Cir. 1997).

29. In this case, the facts show that the Debtor is a single purpose entity that developed the Project with approximately $25 million in loans advanced by the Lender. The Project and the proceeds therefrom are pledged to the Lender as collateral for a Note that matured by its terms in September 2009, after an extension of one year at the Debtor's request. Pursuant to its own Schedules filed in this Chapter 11 Case, the outstanding secured claims (more than $35 million) exceed the value of the collateral ($32 million). As noted above, the Debtor has no prospect of any effective reorganization. It simply does not have the funds necessary to continue to maintain the Project or pay its debt to the Lender.

30. For these reasons, the Lender submits relief from stay is also warranted under section 362(d)(2).

CHICAGO/#2057750.4

                    Respectfully submitted,


                    By:        /s/ Douglas J. Lipke
                              One of Its Attorneys

Douglas J. Lipke (#03124576)
Ryan O. Lawlor (#6288339)
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL  60601-1003
(312) 609-7500
Dated:  April 20, 2010

- 13-