**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
|     **Brittwood Creek LLC** | ) | **CASE NO. 10-15776** |
| | ) | **CHAPTER   11** |
| | ) | **JUDGE Jacqueline Cox** |
|     **Debtor.** | ) | |

**RESPONSE OF BRITTWOOD CREEK LLC TO BRIDGEVIEW BANK'S
MOTION TO MODIFY STAY OR DISMISS CASE**

  **Brittwood Creek LLC** ("Debtor"), debtor in possession , hereby files their Response to Bridgeview Bank's Motion to Modify Stay or Dismiss this case and, in support thereof, does hereby state as follow::

    1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 1112(b), 361, 362(d) and 363 of title 11 of the United States Code (the "Bankruptcy Code").

    Answer:    Admitted

    2.    This case presents a classic situation of a debtor seeking the protections of chapter 11, despite having no prospect for reorganization, simply to delay a foreclosure by a secured lender commenced nearly six months ago.  The Debtor is a single purpose entity whose sole asset is a parcel of real estate fully encumbered by the liens of its undersecured lenders and has few unsecured liabilities. Upon information and belief, the Debtor has no employees. Simply stated, the Debtor has no clear incentive to pursue this Chapter 11 Case, other than to avoid foreclosure. Congress did not intend Chapter 11 to be used in this manner, and the Court should not permit the Debtor to waste time and

money on a chapter 11 process when reorganization is both unrealistic and unnecessary to resolve what amounts to a simple two-party dispute.

       Answer:     Denied

       3.     Accordingly, the Lender seeks dismissal of the Debtor's Chapter 11 Case pursuant to 11 U.S.C. § 1112(b). In the alternative, the Lender requests that this Court lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) or (d)(2) to allow the Lender to prosecute its foreclosure action and foreclose on its collateral. In addition, the Lender respectfully submits that, if the Debtor remains in chapter 11, the Court should grant the Lenders adequate protection in the form of requiring the Debtor to immediately continue debt service of interest and principal, which has not been paid as regularly scheduled for nearly nine (9) months.

       Answer:     Denied

       4.     The Debtor is a single purpose entity that owns a residential project in Du Page County, Oak Brook, IL known as SEQ 35th Street and Route 83 (30 lot subdivision on 56.14 acres), Oak Brook, IL 60521 (such real and personal property is referred to herein collectively as the "Project"). The Project was developed with approximately $25 million in loans advanced by the Lender pursuant to a Construction Loan Agreement (the "Construction Loan Agreement") dated as of November 29, 2006, as amended, by and between Brittwood and the Lender. The Project and the proceeds therefrom are pledged to the Lender as collateral for Brittwood's obligations under the Construction Loan Agreement.

       Answer:     Admitted

5.     The Project consists of 30 residential real estate parcels.  The Project, however, is vacant. Indeed, as of the Petition Date, only one unit of the 30 has been conveyed to a third party purchaser, and not one home has been built on the Project.

Answer:     Admitted

6.     As of the Petition Date, the Debtor's aggregate outstanding obligations to the Lender were in the principal and accrued interest sum of approximately $24,793,920.47, plus fees, expenses and other costs reimbursable under the Loan Documents (collectively, the "Indebtedness").

Answer:     Debtor neither admits or denies but demands strict proof thereof.

7.     Brittwood failed to comply with the terms of the Loan Documents and is in default due to, among other things, its failure to pay the Loan in full on its maturity date of September 5, 2009 (collectively, the "Defaults"). The Construction Loan Agreement, a Promissory Note executed in connection with the Construction Loan Agreement, the Assignment of Rents, the Commercial Security Agreement and the Mortgage (as defined below) and all other documents executed and/or delivered from time to time in connection with, or otherwise evidencing, securing or related to the Note, each as may have been amended or modified from time to time, are collectively referred to as the "Loan Documents." Copies of the relevant Loan Documents are collectively attached hereto as Exhibit A. The Lender's lien and security interest in and to the Project are evidenced by, among other things the Construction Mortgage dated as of November 29, 2006 from the Debtor to the Lender, recorded with the Du Page County Recorder, R2006-238734 (the "Mortgage"), which encumbers the real and personal property located in Oak Brook, IL, that is the underlying property for the Project; and (ii) a UCC-1

Financing Statement, filed on December 8, 2006, naming Brittwood Creek, LLC, as Debtor, and the Lender, as Secured Party, under File No. 11600654 ("Financing Statement").

Answer: Admitted that the loan was not paid, but the Loan was called at the behest of Federal Regulators who required that the Loan be terminated even though it had a construction escrow with funds remaining in it.

8. Both prior to and subsequent to the maturity date, Brittwood has also failed and/or refused to pay real estate taxes with respect to the Project, and, upon information and belief, the 2009 real estate taxes remain unpaid. The Lender, in order to avoid further encumbrances on the Project and the continued diminution of its collateral, advanced funds on behalf of Brittwood to pay the 2008 real estate taxes. Despite demands by the Lender, the Debtor has not cured any of the Defaults.

Answer: Admitted that the taxes were not paid, but denied that they needed to be paid, that the Debtor could not pay them once sales began, or that the Debtor could not or did not attempt to cure defaults.

9. On or about October 29, 2009, the Lender filed an action to foreclose on the Project in the Circuit Court for the Eighteenth Judicial Circuit, in and for Du Page County, Wheaton, Illinois. The proceeding is captioned Bridgeview Bank Group v. Brittwood Creek, LLC, et al., Case No. 09 CH 005173 (the "Foreclosure Action").

Answer: Admitted

10. On Friday, April 9, 2010, on the last business day before the sheriff's sale scheduled for Monday, April 12, 2010 resulting from the Foreclosure Action, the Debtor

filed its petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "Petition").

  Answer:  Admitted

  11. The Schedules state that the Debtor's secured liabilities include (i) $22,000,000 of indebtedness to the Lender, (ii) approximately $13,000,000 of indebtedness to Institute in Basic Life Principles ("IBLP"), and (iii) another approximately $100,000 due contractors and/or subcontractors holding mechanic's liens. See Schedule D. By the Debtor's own assertion, the Project, the only asset of material value to the estate, is only worth $32,000,000 – more than $3,000,000 less than the secured claims against the Project. While the Lender is confident that the evidence will show the Debtor has understated the amount of the Lender's claim and overstated the value of the Project, the result is the same based on the Debtor's assertions – the Debtor has no equity in the Project and the two lenders are grossly under-secured.

  Answer:  Admitted that the Schedules say what they say, but the outstanding second mortgage on the property is completely subordinated to Bridgeview, thus adequately protecting Bridgeview. In addition, the second mortgage is the product of a seller finance mortgage given by a religious institutiton who believes lending money is a sin. Thus, it is the Debtor's position to be mopre fully elucidated that the second mortgage does not exist or encumber any party's interest in any way.

  12. The Schedules further disclose non-insider unsecured claims of only $723,474.94 relating to trade debt and other unsecured claims, all of which is disputed. See Schedule F. Additionally, the Schedules do not identify a single wage, salary or commission claim or any contributions owing to any employee benefit plans, further

evidencing the lack of any employees of the Debtor. See Schedule E. Based on the foregoing, the sum of unsecured claims, priority or otherwise, against the Debtor (excluding insider claims) only amounts to 2% of the amount of the secured claims of the Lender and IBLP.

    Answer:    Admitted that the schedule say whay they say.

` 13. Prior to the Petition Date, the Debtor encountered significant problems in the marketing of the Project. Upon information and belief, the 30 residential lots that comprise the Project first became available for sale in or about August 2008. It was about this time in August 2008 that the Debtor initially sold one lot. That lot, however, remains vacant to this day, and, upon information and belief, no construction is scheduled to begin in the near future. Moreover, since that time, which amounts to nearly two (2) years ago now, the Debtor has not closed a single sale of a residential lot in the Project. Additionally, it is believed there are certain infrastructure and development projects that have not been completed by the Debtor with respect to the Project and that such projects will require an additional $1-$1.5 million to complete. These are funds the Debtor quite clearly does not have. A copy of the Lender's Complaint to Foreclose Mortgage and for Other Relief (excluding exhibits) is attached hereto as Exhibit B and the Judgment of Foreclosure and Sale resulting therefrom is attached hereto as Exhibit C.

    Answer:    Denied

14. By this Motion, the Lender seeks the entry of an order (i) dismissing the Debtor's Chapter 11 Case pursuant to section 1112(b) of the Bankruptcy Code or, in the alternative, granting (a) relief from the automatic stay under section 362(d) of the Bankruptcy Code to permit the Lender to pursue the Foreclosure Action and foreclose on

the Project, and (b) adequate protection to the Lender. The Debtor's bad faith filing constitutes cause for dismissal of this Chapter 11 Case pursuant to Bankruptcy Code Section 1112(b).

    Answer:    Denied

    15.    Bankruptcy Code section 1112(b) authorizes a court to dismiss bankruptcy cases for "cause." 11 U.S.C. § 1112(b). Although "cause" is not defined in the Bankruptcy Code, section 1112(b) sets forth a non-exhaustive list of factors that can constitute cause for dismissal. This Court, as well as many others, has consistently found that "bad faith" constitutes "cause" for dismissal under section 1112(b). In re Tekena USA, LLC, 419 B.R. 341 (Bankr. N.D. Ill 2009); In re Original IFPC Shareholders, Inc., 317 B.R. 738 (Bankr. N.D. Ill 2004); In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir. 1988) (listing factors evidencing bad faith); In re State Street Houses, Inc., 356 F.3d 1345 (11th Cir. 2004) (affirming dismissal on "bad faith" grounds of petition filed by single asset real estate chapter 11 debtor with few creditors, and applying Phoenix Piccadilly factors).

    Answer:    Admitted

    16.    In this case, there is no legitimate doubt the Petition was filed solely to thwart the Lender's effort to enforce the Lender's secured claims in the estate's only significant asset or source of revenue, the Project. As stated above, the Petition was filed literally on the last business day before the sheriff's sale. That is not a proper basis for a chapter 11 filing. See Tekena, 419 B.R. at 346 ("One of the hallmarks of bad faith in filing a petition is pre-petition litigation already pending in the state court between the parties").

Answer: Admitted it was filed the day before the foreclosure sale, buyt denied that it was done to thwart Bridgeview's interest.

17. While there is no particular test for determining bad faith, "courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" In re McCormick Road Associates, 127 B.R. 410, 413 (N.D. Ill 1991) (quoting Phoenix Piccadilly (quoting In re Albany Partners, Ltd., 749 F.2d 670 (11th Cir. 1984)). The McCormick court followed the following factors set forth by the Eleventh Circuit as particularly relevant to bad faith: the debtor only has one asset, the property at issue; the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors; the debtor has few employees; the property is subject to a foreclosure action as a result of amounts owing on the debt; the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. See, e.g., McCormick, 127 B.R. at 413, State Street Houses, 356 F.3d at 1346-47; Phoenix Piccadilly, 849 F.2d at 1394-95.

Answer: Admitted

18. Here, it cannot be disputed that the Debtor's Chapter 11 Case has all of the common attributes of an unjustified and improper filing, and, like the petitions in McCormick, State Street Houses and Phoenix Piccadilly, it should be dismissed. As set

forth above, and by the Debtor's own admissions, the Debtor's only material asset is the Project. The Debtor has very few non-insider unsecured creditors whose claims only amount to 2% of the amount of the secured creditors' claims. See In re Vallambrosa Holdings, L.L.C., 419 B.R. 81 (Bankr. S.D. Ga. 2009) (finding this factor in favor of dismissal where debtor has approximately $31 million in secured claims and $2 million in unsecured claims); State Street Houses (lack of good faith where secured claims were $14,400,000 and unsecured claims were $3,000,000). The Debtor appears to have no employees. The sole asset, the Project, was subject to the Foreclosure Action and was scheduled to be sold at a sheriff's sale the business day after the Petition was filed. Lastly, the Debtor's financial problems are essentially only a dispute with the Lender, as the only other significant creditor to the Debtor (other than its sole managing member) is IBLP, which is prevented from taking any action against the Debtor pursuant to a subordination agreement with the Lender.

       Answer:     Denied

19. In *Tekena*, this Court applied similar factors from *In re Grieshop* 63 BR 657 in dismissing a Debtor's chapter 11 case. Using the same chart set forth in Tekena opinions, the chart (below) sets forth the factors substantially weighing in favor of the dismissal of this Chapter 11 case.

       Answer:     Denied

20. Dismissal on grounds of bad faith is also appropriate where "there is no realistic possibility of an effective reorganization." See McCormick; see also In re 801 South Wells Street Limited Partnership, 192 B.R. 718 (Bankr. N.D. Ill. 1996). Indeed, courts "view with a jaundiced eye Chapter 11 petitions by debtors with a single asset and

with no meaningful body of creditors other than those who hold a mortgage on the single asset." In re South County Realty, Inc. II, 69 B.R. 611, at 615 (Bankr. M.D. Fla. 1987) (citation omitted).

  Answer:  Admitted that these factors exist by Denied that they apply in the present case.

  21.  The Debtor is incapable of demonstrating that there is any reasonable likelihood of a successful reorganization in this case. All of the Project's units are vacant, and have been listed for sale since on or about August 2008, and, upon information and belief, are listed at a purchase price of approximately $1 million per lot. Based on historical evidence, any suggestion that lots within the Project might all of a sudden start to occur is speculative and unsupported at best. Further, the Debtor has no other assets from which it can generate revenue other than the Project, and given current economic conditions, the Debtor cannot generate revenues sufficient to even satisfy basic property taxes, let alone debt service to the Lender or payments to other creditors. The Debtor has not identified any outside source of revenue or capital that can be reused to repay the tens of millions of dollars due the Lender. Accordingly, the Chapter 11 Case should be dismissed.

  Answer:  Denied

  22.  Alternatively, if this Court does not grant the relief under section 1112(b) of the Bankruptcy Code, several independent grounds exist to justify granting the Lender relief from the automatic stay to prosecute the Foreclosure Action.

  Answer:  Denied

    23.    Under section 362(d)(1), bad faith is grounds to lift the automatic stay. See Acquisition Corp., 96 B.R. at 384 (applying test to determine bad faith under section 1112(b) to section 362(d)(1) request for stay relief and lifting stay where bankruptcy petition was filed a day before the debtor would have defaulted on debt to a secured creditor); Phoenix Piccadilly, 849 F.2d at 1394 (citing Natural Land Corp. v. Baker Farms, Inc., 825 F.2d 296 (11th Cir. 1987)). A court may lift the stay based on a finding of bad faith even if it permits the bankruptcy petition to be maintained. See In re Dixie Broadcasting, Inc., 871 F.2d 1023, 1029 (11th Cir. 1989).

    Answer:    Admitted

    24.    As shown above, this Court should lift the automatic stay for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code, based on the Debtor's bad faith filing of the Petition, and permit the Foreclosure Action to proceed.

    Answer:    Denied

    25.    Should the Court not find the Debtor's bad faith alone warrants lifting the automatic stay, relief from the automatic stay should nevertheless be granted for lack of adequate protection of the Lender's security interest in the Project under section 362(d)(1) of the Bankruptcy Code. As initial matter, the Debtor has no ability to provide adequate protection because its only assets (the lots) constitute the collateral of the Lender. Moreover, the Debtor has not provided the Lender with adequate protection of the Lender's interest in the Project in the form of interim cash payments, another type of collateral, or the indubitable equivalent of the Lender's interest in the Collateral.

    Answer:    Denied

26. At the same time, however, the Debtor has continued to possess and control the Project and is managing the Project in such a way that is detrimental to the Lender's security interest. Indeed, the Debtor has failed to pay property taxes on the Project, forcing the Lender to pay such amounts or risk additional liens being placed upon its collateral. Moreover, upon information and belief, all of the funds disbursed pursuant to the Construction Loan Agreement may not have been used on the Project as required. It is unknown, at this time, whether certain funds are still being held by the Debtor or have been used in violation of the Construction Loan Agreement.

Answer: Denied

27. In light of the foregoing, the Lender is entitled to relief from the automatic stay under section 362(d)(1) for "cause" in order to proceed with the Foreclosure Action.

Answer: Denied

28. Section 362(d)(2) provides for relief from the stay if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). To determine whether a debtor has equity in property, the bankruptcy court must compare the value of the property to the amount of the claims which the property secures. In re Bowman, 253 B.R. 233, 238 (8th Cir. BAP 2000) (citations omitted); Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza), 111 F.3d 1264, 1275 (5th Cir. 1997).

Answer: Admitted that this is one manner, but denied that it is the only measure or that it is the one applicable here.

29. In this case, the facts show that the Debtor is a single purpose entity that developed the Project with approximately $25 million in loans advanced by the Lender.

The Project and the proceeds therefrom are pledged to the Lender as collateral for a Note that matured by its terms in September 2009, after an extension of one year at the Debtor's request. Pursuant to its own Schedules filed in this Chapter 11 Case, the outstanding secured claims (more than $35 million) exceed the value of the collateral ($32 million).  As noted above, the Debtor has no prospect of any effective reorganization.  It simply does not have the funds necessary to continue to maintain the Project or pay its debt to the Lender.

    Answer:    Denied

    30. For these reasons, the Lender submits relief from stay is also warranted under section 362(d)(2).

    Answer:    Denied

    **WHEREFORE**, the Debtor requests the entry of an order dismissing Bridgeview Bank's Motion and granting such other and further relief as this court deems just and proper.

                                                Respectfully submitted,
                                                /s/ Michael J. Davis
                                                One of its Attorneys

Michael J. Davis (#6197896)
Springer, Brown, Covey, Gaertner & Davis, LLC
400 S. County Farm Rd., St. 330
Wheaton, IL 60187
(630)510-0000