**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| In re: | } | Case No. 10-15776 |
| BRITTWOOD CREEK, LLC, | } } | |
| | } | Hon. Jacqueline P. Cox |
| Debtor. | } | Hearing Date: May 12, 2010 |
| | } | Hearing Time: 9:30 a.m. |

---

**BRIEF IN SUPPORT OF RESPONSE TO THE MOTION OF BRIDGEVIEW BANK GROUP PURSUANT TO 11 U.S.C. §§ 1112(B), 362(d), 361 AND 363, FOR AN ORDER DISMISSING THE BANKRUPTCY CASE, OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY AND ADEQUATE PROTECTION**

---

Brittwood Creek, LLC, by and through its counsel, Michael J. Davis of Springer, Brown, Covey, Gaertner and Davis, respectfully requests this court deny the Motion to Dismiss the Chapter 11 case, on the grounds that dismissal is not warranted given the facts of this case. Further, Brittwood Creek requests this court deny Bridgeview Bank Group their request for relief from the automatic stay because it is highly likely that Brittwood Creek will be able to present a workable reorganization plan.

**I. SUMMARY OF THE FACTS**

Brittwood Creek, LLC is a developer that has been working on a residential project (herein the "Project") located in Oak Brook, Illinois. The Project consists of 30 partially developed lots, many of which are currently under contract for sale. The spreadsheet of pending sales in the Project is attached to this Response as Exhibit A, and it details the nine lots that Brittwood Creek is currently in the process of selling. Contrary to Bridgeview's assertions in their Motion, Brittwood has seen a lot of interest generated in

the Project as of late, and Brittwood is currently taking steps to attempt to cure their defaults and form a viable reorganization plan.

As indicated by their inaccurate assertions in their Motion, and by their actions throughout the pendency of this case, Bridgeview Bank's motivations in their attempts to obtain a Foreclosure and gain dismissal or relief from the automatic stay on the property are questionable.  First of all, Bridgeview is not the only creditor.  The Institute in Basic Life Principles (herein "IBLP"), an Illinois not-for-profit religious organization located at 900 Oakmont Lane, Ste 110, Westmont, Illinois, is the second largest creditor of Brittwood Creek, LLC in the amount of $13,102,800.00.  (See Schedule D).  It is important to note that IBLP is bound by a number of religious principles that unite their organization, and amongst these principles is the principle that individuals and entities are not to loan money to other individuals and entities.  This creates a very interesting situation for Brittwood Creek.  First of all, the loan document that sets out the terms of the $13 million loan from IBLP to Brittwood, which is attached to this Response as Exhibit B, clearly states that IBLP subordinates its interest to any other interest on the Project. (See Exhibit B; Schedule D).  Consequently, IBLP's interest in the Project is not as large a problem for Bridgeview or Brittwood as Bridgeview has made it seem in their Motion, as IBLP's interest is clearly and contractually subordinated to the interest of Bridgeview.

Second, upon information and belief, testimonial evidence and circumstantial evidence will be brought to the attention of the court during the hearing scheduled for May 12th that IBLP and Brittwood Creek have undergone extensive negotiations with Bridgeview Bank.  Amongst these negotiations included an offer (**cash in hand**) by IBLP

to Bridgeview to completely buy out Bridgeview's interest in the Property. Bridgeview, however, refused. Not only did they refuse, Bridgeview stated that their motions for refusing were that the property would be worth somewhere around $32 million to them if they were successful in foreclosing on the property. Bridgeview isn't trying to collect the money that they are owed, Bridgeview is trying to capitalize on the bad financial fortune of Brittwood Creek, LLC. Bridgeview claims in their Motion that they have not been provided with any adequate protection of their interest in the Project in the form of the indubitable equivalent of the Lender's interest in the Collateral, the Project (Motion p. 16). However, Bridgeview refused an offer for the majority of their interest and they refused, with hopes that they can manipulate the system into allowing them a foreclosure so they can double their money.

## II. STANDARD OF REVIEW

Dismissal of Chapter 11 case for cause under 11 U.S.C. § 1112(b) on grounds that the petition was filed in bad faith is a matter for the Bankruptcy Court's discretion and the issue of good faith is factual and will often require the introduction of evidence. *In re Stolrow's Inc.*, 84 B.R. 167 (9th Cir. 1988). A movant seeking to dismiss a Chapter 11 case for cause based on the alleged lack of good faith in filing bears the burden of proving by a preponderance of the evidence that the debtor filed the bankruptcy case in bad faith. *In re Local Union 722 Intern. Broth. Of Teamsters*, 414 B.R. 443 (N.D. Ill. 2009). A determination of a bad faith filing in a Chapter 11 case is made by considering the totality of the circumstances. *Id*. The earlier in Chapter 11 case that a motion is filed to convert or dismiss case, the more reluctant the courts are, absent some compelling justification, to abort statutory confirmation process by ordering conversion or dismissal.

*In re Dilling*, 322 B.R. 353, 360 (N.D. Ill. 2005); *In re 4 C Solutions, Inc.*, 298 B.R. 354, 364 (C.D. Ill. 2003). To establish cause for dismissal or conversion of Chapter 11 case under section of the Bankruptcy Code authorizing such action for continuing loss to or diminution of the estate, the moving creditor must prove both (1) continuing loss to or diminution of the estate and (2) absence of a reasonable likelihood of rehabilitation. *Id.*

### III. ARGUMENT

    **a. Dismissal is not appropriate under 11 U.S.C. § 1112(b) because dismissal is not in the best interests of all the creditors of Brittwood Creek, LLC.**

Under 11 U.S.C. § 1112(b)(1), a bankruptcy petition can only be dismissed in the absence of circumstances that establish the dismissal is "not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b) (2010). Further, when bad faith on behalf of the debtor is alleged, "cause" only exists for dismissal of a Chapter 11 case where a debtor has acted in *subjective* bad faith and where reorganization of the debtor is unrealistic. *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994); *In re Dunes Hotel Associates*, 188 B.R. 162, 168 (Bktrcy.D.S.C. 1995). In determining what is best for a particular estate, the court must consider the interests of *all* the creditors. *Superior Siding*, 188 B.R. at 168; *In re Garcia and Co., Inc.*, 78 F.3d 592 (9th Cir. 1996); *In re Owens*, 552 F.3d 958, 961 (9th Cir. 2008).

First, Bridgewood is not the only creditor. As previously mentioned, there are a number of creditors whose interests are affected by the disposition of this case. Just because Bridgewood is attempting to benefit from the situation doesn't mean their proposed dismissal or relief from the automatic stay would be in the best interests of the rest of the creditors of this estate. A foreclosure on the Project would mean that

Bridgeview would be paid, but that no other creditor would receive anythingbecause there is excess equity in the property over what Bridgeview is owed. Second, reorganization of the debtor is realistic in this case. With nine pending sales, the beginning of a viable plan of reorganization is falling into place, and Brittwood Creek deserves the opportunity to present that plan for the court's approval.

### b. A dismissal of this case is not warranted because there has been no bad faith on behalf of Brittwood Creek, LLC in their petition filing.

Whether good faith exists in any case depends upon the facts and circumstances presented, and no one factor is dispositive of that determination. *In re Thirtieth Place, Inc.*, 30 B.R. 503, 504 (9th Cir. 1983). In considering whether bad faith exists, the mere fact that a Chapter 11 petition thwarts a judgment creditor in its attempt to enforce its valid legal rights is alone no basis to deny relief on a debtor's petition, provided the debtor has honest intentions and a real need for such relief and the ability to obtain relief under the provisions of Chapter 11. *In re Adelle*, 310 B.R. 460, 461 (M.D. Florida 2008).

"Good faith" doctrine, for the purpose of a motion to dismiss a Chapter 11 petition as not filed in good faith, is primary concerned not with the debtor's subjective good faith, but with the underlying question of whether reorganization is proper in a particular case. *In re Mandalay Shores Co-op. Housing Ass'n, Inc.*, 63 B.R. 842, 848 (N.D. Ill. 1986) ("what goes under the name of an "objective good faith" inquiry under Chapter 11 really amounts to analysis of the merits of the debtor's claim of entitlement to reorganization"). Factors relevant in examining whether a Chapter 11 petition have been filed in good faith include whether the debtor had any assets, whether the debtor had any business to reorganize, and whether there was a reasonable probability of a plan being

proposed and confirmed. *Id.* (citing *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985)).

In regards to the number of creditors, bad faith in filing Chapter 11 case is not found solely because the debtor has one or a small body of creditors, since filing a Chapter 11 case after falling on the wrong side of a judgment is not uncommon. *In re Local Union 722 Intern. Broth. Of Teamsters*, 414 B.R. 443, 448 (N.D. Ill. 2009). Indeed, filing a chapter 11 case because of one large judgment is not at all unusual. *In re Texaco, Inc.*, 254 B.R. 536, 541 (S.D.N.Y. 2000) ("Texaco filed under Chapter 11 for the sole purpose of compromising a $10.5 billion judgment.") There is no support in the Bankruptcy Code for the notion that a debtor must have more than one creditor to file bankruptcy, especially when the creditor's claim equals or exceeds the debtor's assets, as is the case here. *Dilling*, 322 B.R. at 362.

In this case, Brittwood Creek is entitled to a denial of the Motion for Dismissal because they have a real need for relief, honest intentions, and the ability to obtain relief under Chapter 11. *Adelle*, 310 B.R. at 461. Further, Brittwood has assets, they do have business to reorganize, and there is a reasonable probability of a plan being proposed and confirmed. *Mandalay*, 63 B.R. at 848. Bridgeview also alleges a number of factors from *In re Tekena USA, LLC*, 419 B.R. 341, 346 (N.D. Ill. 2009), and bad faith can still not be established on behalf of Brittwood.

| **Factors Considered by the *Grieshop* Court and this Court in *Tekena*** | **Comparison to this Chapter 11 Case** |
|---|---|
| 1. The debtor has few or no unsecured creditors. | The *Tekena* court held this factor weighed against the debtor due to the fact that one |

|  | |
|---|---|
|  | of its largest creditors was a co-conspirator in "objectionable conduct." *Tekena*, 419 B.R. at 347. Clearly, this isn't the case here, and Brittwood has a number of creditors besides Bridgeview. Further, filing a petition with one large creditor does not indicate bad faith. *Local Union 722*, 441 B.R. at 448. |
| 2. There has been a previous bankruptcy petition by the debtor or a related entity. | Not alleged here. |
| 3. The pre-petition conduct of the debtor has been improper. | In *Tekena*, the court found that the debtor was formed to frustrate the collection of a judgment; this is not the case here, as Brittwood has both a real need for relief and a realistic expectation of reorganization. *Adelle*, 310 B.R. at 461. |
| 4. The petition effectively allows the debtor to evade court orders. | The Petition allows Brittwood Creek to form an effective plan of reorganization that best serves all of its creditors, instead of allowing Bridgeview to foreclose on the Project so they can double their money. |
| 5. There are few debts to non-moving creditors. | As stated herein, the largest creditor besides Bridgeview, IBLP, has a $13 million loan on the Project. |
| 6. The petition was filed on the eve of foreclosure. | **The petition was filed on the last business day before the scheduled foreclosure; however, it was due to the last minute obtainment of legal assistance, not because of an attempt to abuse the legal process.** |
| 7. The foreclosed property is the sole or | The Project is the major asset of the debtor, |

| | |
|---|---|
| major asset of the debtor. | however, it is the sale of the lots within that major asset that will be the groundwork for the reorganization plan. |
| 8. The debtor has no ongoing business or employees. | As stated herein, there are nine sales in progress in the Project. |
| 9. There is no possibility of reorganization. | The pending sales are evidence of the viability of Brittwood Creek's ability to reorganize. |
| 10. The debtor's income is not sufficient to operate. | Bridgeview misstates the value of the income of units from the Project.  The increasing income from the sale of units will aid Brittwood in operating. |
| 11. There was no pressure from non-moving creditors. | There is pressure from IBLP on Bridgeview to negotiate, however, Bridgeview has disregarded all offers made. |
| 12. Reorganization essentially involves the resolution of a two-party dispute. | Even though a two party dispute in bankruptcy is not an indication of bad faith, as explained herein, this is more than a two party dispute as there are purchasing parties and negotiating parties as well. |
| 13. A corporate debtor was formed or received title to its major assets immediately before the petition and | Not alleged here. |
| 14. The debtor filed solely to create the automatic stay. | As explained herein, Brittwood did not file solely for the benefit of the automatic stay, as they have a reasonable belief that a reorganization plan can be created and approved. |

*In re 4 C Solutions, Inc.*, 289 B.R. 354, 364 (C.D. Ill. 2003), also cited two more

factors in addition to the *Tekena* factors: Falsehoods or inaccuracies in the bankruptcy schedules; and that the debtor is seeking to use the bankruptcy process to create and organize a new business, not to reorganize an existing enterprise or preserve the going concern value of an existing business. There have been no allegations that Brittwood is responsible for any falsehoods or inaccuracies in the schedules, and it is clear that Brittwood is attempting to reorganize their existing enterprise. If continuing a Chapter 11 case would promote the two goals of preserving going concerns and maximizing property available to satisfy creditors, then the case should not be converted or dismissed. *Id.* Here, this is clearly the case.

> **c. Relief from stay is not appropriate or warranted under Section 362(d), 361 and 363 because there has been no bad faith on behalf of Brittwood Creek, and because Brittwood Creek has not failed to meet any of the requirements under Section 362(d).**

First, as argued extensively herein, there is no bad faith alleged that warrants relief of the automatic stay under 11 U.S.C. § 362(a). *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988).

Second, even though Section 362(d)(3) of the Bankruptcy Code appears to mandate some relief where the debtor fails to satisfy the "plan or payment" requirements, some courts have held that the unconditional lifting of the stay is not even mandatory when ruling upon a motion pursuant to Section 362(d)(3). *In re Archway Apartments, Ltd.,* 206 B.R. 463, 465 (Bankr. M.D.Tenn.1997); *see also In re Terraces Subdivision, LLC*, 2007 WL 2220448, at *4 (Bankr. D. Alaska Aug. 2, 2007). In *Archway*, the Chapter 11 debtor had failed to file a plan within the ninety (90) day period by "simple, honest error" with no attempt by the debtor to deliberately delay the rights of the creditor. 206 B.R. at 465. The Court felt compelled by Section 362(d)(3) of the Bankruptcy Code to grant relief to

the creditor but it did so in the form of conditioning the stay upon a drop-dead date for confirmation of the plan, rather than unconditional relief from the automatic stay. In doing so, the Court reasoned "[w]hile Congress may have enacted Section 362(d)(3) to protect the interests of secured creditors in single asset real estate cases, it did not completely abrogate the bankruptcy court's discretion to tailor the appropriate relief for failure to strictly comply with the requirements of Section 362(d)(3)." Id.

This case hasn't even come to the failure to file a plan. Brittwood Creek is making a good faith effort to move forward, secure sales of lots, and create a reorganization plan. The legislative history behind Section 362(d)(3) of the Bankruptcy Code provides that: "[t]his amendment will ensure that the automatic stay provision is not abused, *while giving the debtor an opportunity to create a workable plan of reorganization.*" *In re LDN Corp.,* 191 B.R. 320, 326 (Bankr.E.D.Va.1996); 3 COLLIER ON BANKRUPTCY ¶ 362.07[5][b] n.81 (15th rev. ed. 1997). It is that opportunity that Brittwood is entitled to. Brittwood is not managing the Project in a way that is detrimental to Bridgeview's security interests, as Bridgeview alleges: Brittwood is making a good faith effort to reorganize during the stay that they are entitled to under 11 U.S.C. § 362.

## IV.   CONCLUSION

For the reasons stated herein, Brittwood Creek, LLC respectfully requests that Bridgeview Bank Groups Motion for an Order Dismissing the Bankruptcy Case or, in the alternative, Granting Relief from Automatic Stay be denied.

                Respectfully submitted,
                /s/ Michael J. Davis
                One of its Attorneys

Michael J. Davis (#6197896)
Springer, Brown, Covey, Gaertner & Davis, LLC
400 S. County Farm Rd., St. 330
Wheaton, IL 60187
(630)510-0000